

06-CV-05437-CMP

FILED _____ LODGED
_____ RECEIVED

AUG 0 3 2006

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

#F-678

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. BRUCE BRANDLER,<br><br>Plaintiff,<br><br>v.<br><br>MSO WASHINGTON, INC., a Washington corporation; CHARLES PLUNKETT; RICHARD RYNES, M.D.; GLEN KEITZER, M.D.; ANDREW ABOLINS, M.D.; KENITH AARO, M.D.; SAM KARANAM, M.D.; CORAL HILBY, M.D.; EXPEDITA CASTRO, M.D.; TIMOTHY SMITH, M.D.; DOUGLASS HARROUN, M.D.; LYNN OSTENSON, M.D., THOM MCDONNELL, M.D.; THOMAS SMITH, M.D.; MARGARET GAINES, M.D.; DICK COE, M.D.; RITU SHETTY, M.D.; JOHN LORD, DPM; JOHN FORD, DPM; COLLEEN WOJCIECHOWSKI; GIGI HARDTKE; RICHARD ATER; PHIROCE ISHAQUE; GEORGIA MOHLER; LINDA LEPAPE;<br><br>Defendants. | NO. C06 5437 RJB<br><br>COMPLAINT<br><br>FILED EX PARTE AND UNDER SEAL<br><br>JURY TRIAL DEMANDED |

COMPLAINT - 1 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

**ORIGINAL**

# COMPLAINT
## (False Claims Act)

## PRELIMINARY STATEMENT

This lawsuit is based on a scheme by defendants to defraud the United States Government through its health insurance programs, including the Medicare and the Medicaid programs. Defendants provide medical care delivered to the home and other non-medical office settings for elderly, disabled and mentally incapacitated patients in the greater Puget Sound area. Defendants have billed those programs for medically unnecessary and improperly/undocumented services, and have billed those programs unreasonable and improper charges for those services. Defendants' scheme was designed to defraud the United States, the Medicare and Medicaid programs and the American taxpayers of millions of dollars through fraud, waste, abuse and mismanagement while preying upon patients who were least likely to discover and resist defendants' fraudulent activities.

Since at least 2000, defendants' pervasive pattern of fraud has included: (1) overly frequent visits to patients; (2) a failure adequately to document the necessity of the frequent visits and the services rendered during those visits; (3) mislabeling diagnoses or treatments to increase the purported value of Medicare and Medicaid claims ("upcoding"); (4) a failure to document and justify why medical services were rendered in a non-office setting, resulting in dramatically increased Medicare and Medicaid claims; and (5) an electronic medical record system known as ATLAS, which was designed and/or utilized by defendants to implement and facilitate the fraudulent practices set forth above.

Plaintiff (the Relator), by the undersigned counsel and acting on behalf of and in the name of the United States of America, brings this civil action under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. §§ 3729-3733, and alleges:

COMPLAINT - 2 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

## JURISDICTION AND VENUE

1. This Complaint is a civil action by plaintiff acting on behalf of and in the name of the United States, against all defendants under the federal False Claims Act, 31 U.S.C. §§ 3729-3733. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732(a).

2. Each defendant transacts business in this judicial district. In addition, virtually all of the acts proscribed by 31 U.S.C. §3729 occurred in this judicial district. This Court has personal jurisdiction over the defendants, and venue is appropriate in this district pursuant to 31 U.S.C. §3732(a).

3. None of the allegations set forth in this Complaint is based on a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation, or from the news media.

4. Plaintiff has direct and independent knowledge, within the meaning of 31 U.S.C. § 3730(e)(4)(B), of the information on which the allegations set forth in this Complaint are based, and he has voluntarily provided the information to the Government prior to any public disclosure of these allegations and prior to the filing of this Complaint.

## PARTIES

### Plaintiff

5. Plaintiff is a citizen of the United States and a resident of this judicial district and is suing in the name of and on behalf of the United States. Plaintiff was employed by defendant MSO Washington ("MSO") from approximately June, 1999 through October, 2005. MSO (which stands for "Management Services Organization") provides physician practice management services, contracts with Evercare and Secure Horizons for Medicare managed

COMPLAINT - 3 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

care services, and provides physician and other ancillary services to patients living in adult family homes, assisted living facilities, independent living facilities, individual homes, mental health facilities and group homes. This latter service operates as "The Home Doctor." Plaintiff served as Compliance Officer for MSO/Home Doctor, and was also responsible for marketing the Home Doctor program. In performing these duties, plaintiff detected a systematic pattern of billing on the part of defendants which, upon further investigation, led him to conclude that defendants were (1) billing for services which were not medically necessary; (2) seeing patients too often; (3) improperly documenting visits; (4) improperly coding; and (5) engaging in other fraudulent practices. Thus, plaintiff's specific knowledge of defendants' fraudulent activities comes from his personal observation of the events described herein.

**Defendants**

6. Defendant MSO is a privately owned Subchapter S corporation incorporated in 1993 in Washington State. Physicians and other providers of medical services, such as nurse practitioners, enter into contracts with MSO. A copy of portions of a representative contract between a physician and MSO is attached as Exhibit 1.

7. Defendant Charles Plunkett is the sole shareholder of defendant MSO. In or about 2000, Mr. Plunkett played a key role in designing ATLAS to include features and components which fostered and enabled defendants' fraudulent course of conduct. Mr. Plunkett and MSO encouraged and actively participated in that fraudulent course of conduct, and knowingly made, used or caused to be made or used false records or statements to get false or fraudulent Medicare and Medicaid claims paid or approved by the Government.

8. Defendant Dr. Richard Rynes was the MSO Medical Director in 2001, and was a MSO/Home Doctor medical provider from 1999 through 2002.

COMPLAINT - 4 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

9. Defendant Dr. Glen Keitzer was an MSO/Home Doctor medical provider from 1999 through 2001.

10. Defendant Dr. Andrew Abolins was an MSO/Home Doctor medical provider from at least 2000 through at least October, 2005.

11. Defendant Dr. Kenith Aaro was an MSO/Home Doctor medical provider in 2000.

12. Defendant Dr. Sam Karanam was an MSO/Home Doctor medical provider from 2001 through 2002.

13. Defendant Dr. Coral Hilby was an MSO/Home Doctor medical provider in 2000.

14. Defendant Dr. Expedita Castro was an MSO/Home Doctor medical provider from 2000 through 2005.

15. Defendant Dr. Timothy Smith has been an MSO/Home Doctor medical provider from 2000 through the present.

16. Defendant Dr. Douglass Harroun was an MSO/Home Doctor medical provider from 2000 through 2003.

17. Defendant Dr. Lynn Ostenson was an MSO/Home Doctor medical provider from 2001 through 2003.

18. Defendant Dr. Thom McDonnell was an MSO/Home Doctor medical provider in 2002.

19. Defendant Dr. Thomas Smith has been a MSO/Home Doctor medical provider from 2001 through the present.

20. Defendant Dr. Margaret Gaines was a MSO/Home Doctor medical provider from 2003 through the present.

COMPLAINT - 5 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

21. Defendant Dr. Dick Coe has been a MSO/Home Doctor medical provider from 2004 through the present.

22. Defendant Dr. Ritu Shetty has been a MSO/Home Doctor medical provider from 2003 through the present.

23. Defendant Dr. John Lord has been a MSO/Home Doctor medical provider from 2003 through the present.

24. Defendant Dr. John Ford has been a MSO/Home Doctor medical provider from 2003 through the present.

25. Defendant Colleen Wojciechowski was a Nurse Practitioner with MSO/Home Doctor from 2000 through 2002.

26. Defendant Gigi Hardtke was a Nurse Practitioner with MSO/Home Doctor in 2003.

27. Defendant Richard Ater was a Nurse Practitioner with MSO/Home Doctor in 2003.

28. Defendant Phiroce Ishaque has been a Nurse Practitioner with MSO/Home Doctor from 2003 through the present.

29. Defendant Georgia Mohler has been a Nurse Practitioner with MSO/Home Doctor from 2004 through the present.

30. Defendant Linda LePape has been a Nurse Practitioner with MSO/Home Doctor from 2005 through the present.

## FEDERALLY-FUNDED HEALTH INSURANCE PROGRAMS

**Medicare**

31. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et. seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare

COMPLAINT - 6 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

program. The United States Department of Health and Human Services ("DHHS"), acting by and through the Center for Medicare and Medicaid Services ("CMS"), is an agency of the United States responsible for, among other things, administering the Medicare program under which the providers of services may be reimbursed with federal funds.

32. DHHS, through CMS, provides health insurance to eligible aged and disabled Americans (Medicare beneficiaries) pursuant to the provisions of the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C., Sections 1395, *et. seq*. The Medicare Program provides health care services and benefits to certain eligible groups such as persons over ages sixty-five, disabled persons and qualifying homebound persons in need of medical and nursing care. The Medicare Program is administered under two distinct parts. Medicare Part A, "Hospital Insurance for the Aged and Disabled", covers health care services furnished by hospitals, home health agencies, hospices, and skilled nursing facilities. Medicare Part B, "Supplementary Medical Insurance for the Aged and Disabled", covers laboratory services, x-rays, physicians' services and other non-institutional services, such as medical supplies and durable medical equipment (DME), as well as some other services not reimbursed under Medicare Part A.

33. Defendants would primarily apply to CMS for reimbursement of Home Doctor services under Medicare Part B.

34. Approximately 75 per cent of the billings at issue in this action were reimbursed by Medicare.

**Medicaid**

35. Medicaid is a cooperative federal-state program that provides financial assistance to states to subsidize certain costs of medical treatment for certain low-income

COMPLAINT - 7 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

individuals. Washington State has adopted a Medicaid State Plan and is a participating Medicaid state.

36. Approximately 25 per cent of the billings at issue in this action were reimbursed by Medicaid.

**Medicare and Medicaid Coverage and Payments**

37. Medicare and Medicaid coverage and payments are based both on the reasonableness of the charges for, and the medical necessity of, the services rendered. For example, Title XVIII of the Social Security Act, 42 U.S.C. § 1395y provides, in pertinent part, that "no payment may be made under Part A or Part B for any expenses incurred for items or services—which . . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

## BACKGROUND OF DEFENDANTS' ACTIVITIES

**Plaintiff's Efforts to Enforce Compliance Policies and Lawful Conduct**

38. Throughout the course of his employment with MSO, plaintiff consistently took steps to attempt to insure that defendants' medical record documentation was complete, accurate and appropriate. For example, plaintiff was primarily responsible for compiling, circulating and educating relevant Providers, including the individual defendants, with an MSO Compliance Program (Exhibit 2) and with an MSO Washington Training Guide—Manual To Assist Providers In Their Coding And Documentation (Exhibit 3).

39. Exhibit 4 is an extensive collection of memoranda, minutes of MSO/Home Doctor medical staff meetings and other documentation which have been highlighted and which demonstrate the detailed and consistent efforts undertaken by plaintiff in an attempt to insure appropriate and well-documented Medicare and Medicaid billing practices by defendants. For example:

COMPLAINT - 8 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

- At least in 2001 and 2002, plaintiff prepared, circulated and posted Clinical Documentation Standards. These Standards included, among other things, the following admonitions and policies:

  > The following is a listing of unacceptable practices, and a violation of any one of them will create severe disciplinary action -- including termination of employment or termination of an independent contractor agreement:
  >
  > - Billing for items or services not actually rendered
  > - Billing for medically unnecessary services
  > - Duplicate billing
  > - Knowingly billing for inadequate or sub-standard care
  > - Insufficient documentation
  > - Falsifying plans of care
  > - Forged physician signatures
  > - Creating referrals without the physician approval or initiation
  > - Forging any document
  > - Theft
  >
  > The chart must be sufficiently detailed to include documentation which supports the level of the code. To achieve this goal, coding will include the history, examination, medical decision-making, and the amount and/or complexity of data reviewed. Practitioners were given these coding protocols in a past medical staff meeting, and one such tool was entitled, "Choosing the Appropriate Outpatient E/M Code." These are available in the office.

- The Minutes of a January 24, 2002 Medical Staff Meeting state as follows:

  > Under compliance report, [Mr. Brandler] handed-out information on how the company will support the physician providers in any way possible, but the physicians deliver the care and they must meet Medicare Medical Necessity Criteria as outlined in the material he handed out. He also reminded them that the frequency

COMPLAINT - 9 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

> of their visits is also a function of the patient's problems and it is a clinical decision that the doctor must make. He said that whether the patient is seen every month or every 6 months, as an example, it is up to the doctor to determine as per their clinical judgment. ATLAS was set-up to default to 5 weeks, but the doctors can vary that as they see fit. All of this information was sent to the doctors last year and was addressed at various medical staff meetings.

- The July 31, 2003 Medical Staff Meeting Minutes provide as follows:

    > The first item on the agenda was compliance. We handed out both the MSO Compliance Plan, as well as the Code of Conduct. We reminded them that they received this and signed the physician acknowledgment, however, we wanted to use the time to refresh them on compliance issues and our expectations.
    >
    > Mr. Brandler highlighted various issues such as billing, coding, and documentation, and he asked if there were any questions. Our attorney was present to handle any questions or concerns.
    >
    > Mr. Brandler then spoke about the need for the providers to document their visit, and to address issues such as medical necessity. He also handed out various memos that have been distributed in the past to point out clinical documentation expectations. These memos address medical necessity, frequency of visits, proper coding, and other related topics. He mentioned that he sent out a memo to the billing and Home Doctor staff to have them be aware of these issues and to have the providers submit proper documentation.

- On May 1, 2004, plaintiff circulated the following memorandum, with attachments:

    > I thought it would be helpful to remind all the providers about Medicare's Medical Necessity Criteria to justify patient visits.
    >
    > To be considered reasonable and necessary, I have attached a few pages from our Medicare Manual, and as you can see, the key is documentation. The situation is

COMPLAINT - 10 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

the same with your coding, you have to have sufficient support for whatever code you bill.

- A July 6, 2004 Memorandum from plaintiff to all Home Doctor providers states as follows:

> As a reminder, as you code and document, there should neither be downcoding or upcoding, but rather **appropriate** coding. That is, medical necessity must be met, and then code your evaluation and management (E/M) visit according to your supporting documentation.

40. Despite plaintiff's best efforts, medical record documentation for Medicare and Medicaid reimbursement by defendants was woefully and intentionally deficient. As demonstrated above, plaintiff made defendants acutely aware of those deficiencies.

**Defendants' Fraudulent Scheme**

41. ATLAS, the electronic record system created by defendants MSO and Plunkett, was the engine which powered defendants' fraudulent scheme. ATLAS is a software program which was used by the individual defendant medical providers as they saw patients and documented their encounters. Each MSO medical provider used ATLAS on a laptop computer.

42. ATLAS was designed with a variety of electronic fields, including fields for subjective notes; historical information; lab, x-ray and other consult buttons; a pharmacy component; and a button to click for the exam of body systems. Defendants MSO and Plunkett expressly designed ATLAS so that each medical provider could input an entire patient encounter in ATLAS. MSO and Mr. Plunkett sought to make it easier for the provider to make entries, and to eliminate bulky paperwork, and that was the rationale given for the electronic records.

43. However, the medical provider could and did also "cookie-cutter" records by clicking buttons that created "canned entries." The individual defendants and other medical

COMPLAINT - 11 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

providers use a standardized system of numerical codes for patients' services, required by Medicare, Medicaid and other Government programs. These codes are based on criteria established by the American Medical Association in the Physicians' Current Procedural Terminology ("CPT"). CPT codes describe medical procedures performed by physicians and other health providers, and also include a component for the location (or place of service ("POS")) where the medical services are rendered (home, physicians' office, hospital, etc.). ATLAS includes billing buttons which make POS and CPT options available for a medical provider to click.

44.    In regard to a patient examination, for example, clicking one button would create "Normal" for a particular body system, and other buttons brought-up medical problems, diagnoses, and medications from prior visits. Thus, it was very easy to create a medical record by replicating previous patient encounter entries. Even if a provider spent a few minutes with a patient, the clinical and financial record could easily be made by clicking a few buttons. Moreover, MSO greatly encouraged provides to use these buttons, called "macros."

45.    ATLAS was expressly programmed to implement and facilitate defendants' scheme to defraud the Government. Beginning in approximately 2000, ATLAS was programmed to schedule medical appointments with each Home Doctor patient **every five weeks**. Although the individual defendants retained the flexibility to schedule these medical appointments more or less frequently as called for by each individual patients' unique circumstances, in fact the individual defendants almost never countermanded this automatic, five week interval scheduling of appointments by ATLAS.

46.    Moreover, throughout the course of his employment with MSO, plaintiff became aware that the individual defendants virtually never provided sufficient

COMPLAINT - 12 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

documentation for the justification or necessity of any of the medical services at non-office settings, much less medical services rendered on a routine, every five week basis.

47.     Plaintiff does not currently have access to defendants' billing records. A detailed review and audit of these records, however, will reveal that in connection with billings submitted to the Government, defendants: (a) churned MSO/Home Doctor patients by engaging in unnecessarily frequent medical visits; (b) provided unnecessary medical services; and (c) failed to adequately document the necessity for, and nature of, medical services rendered to MSO/Home Doctor patients, in non-office settings.

48.     As noted in Paragraph 43, medical providers (including defendants) who bill Medicare or Medicaid and other Government programs use a standardized system of numerical CPT codes for patient services. "Upcoding" is a practice where a medical provider mislabels diagnoses or treatments on claim forms to increase the value of the claim. During the course of his employment with MSO, plaintiff consistently warned defendants to avoid upcoding and other improper billing practices, including insufficient documentation to support medical bills. Although plaintiff does not currently have access to defendants' billing records, a detailed review and audit of those records will reveal that in connection with billings submitted to the Government, defendants frequently (a) upcoded medical services rendered to MSO/Home Doctor patients, and (b) failed to adequately document the necessity for, and nature of, those medical services.

49.     Another significant component of MSO/Home doctor billings submitted by defendants to the Government is the place of service ("POS").

50.     Medicare pays for services provided by providers such as defendants to program beneficiaries. Although providers routinely perform many of these services in a facility setting, including an outpatient hospital department or a freestanding ambulatory

COMPLAINT - 13 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

surgical center, certain of the same services may also be performed in non-facility settings, such as a physician's office, a home, or a nursing care facility. To account for the increased practice expense incurred by providers in non-facility settings, Medicare reimburses a higher amount for services performed in this setting. Physicians are required to identify the place of service on the health insurance claim from submitted to Medicare carriers for payment. The correct place of service code ensures that Medicare is not duplicating payment to the physician and the facility for any part of the practice expense incurred to perform the service.

51. In order for providers like defendants to receive a higher non-facility practice expense payment, the service must meet the requirements of 42 CFR 414.22(b)(5)(i)(B) as follows:

> . . . The higher non-facility practice expense [payments] apply to services performed in a physician's office, a patient's home . . . a nursing facility, or a facility or institution other than a hospital or skilled nursing facility . . . .

52. POS codes are two-digit codes placed on health care professional forms to indicate the setting in which a service was provided. A list of POS Codes is attached as Exhibit 5.

53. Throughout the course of his employment with MSO, plaintiff cautioned defendants and others that appropriate POS Codes must be used and that the reasons for the selection of particular POS codes must be fully and appropriately documented.

54. Throughout the course of plaintiff's employment with MSO, defendants consistently billed MSO/Home Doctor medical services at POS Code 12 ("Home"). Despite plaintiffs' efforts, defendants almost never documented why (1) it was medically necessary to visit patients in a non-office settling, and (2) MSO/Home Doctor medical services were billed under POS Code 12 ("Home") rather than under POS Codes 13 (Assisted Living Facility"),

COMPLAINT - 14 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

14 ("Group Home"), 32 ("Nursing Facility") or 33 ("Custodial Care Facility"). Payments for POS Code 12 services are significantly higher than payments for POS Codes 13, 14, 32 and 33.

55. In or about 2000, ATLAS was modified to include a box which the medical provider defendants could and did simply check to indicate that rendering of medical services at a patient's alleged "home" (POS Code 12) was medically necessary. For example, if an adult family home was on the screen and the provider clicked the billing button, the CPT codes for that location were those for a POS 12 (private residence). This was programmed by Mr. Plunkett, the owner of MSO, since he insisted that adult family homes are a Place of Service 12.

56. Although plaintiff does not currently have access to defendants' billing records, a detailed review and audit of these records will reveal that thousands of billings to the Government under POS Code 12, as well as under POS Codes 13, 14, 32 and 33, were improper and were not properly documented.

## CAUSES OF ACTION

### COUNT I
### (Federal False Claims Act – 31 U.S.C. § 3729(a)(1))

57. Plaintiff realleges and incorporates by reference paragraphs 1 through 56 as though fully set forth herein.

58. Defendants have knowingly submitted false or fraudulent claims for payment, or caused false or fraudulent claims for payment to be submitted, to officials of the United States Government, in violation of 31 U.S.C. § 3729(a)(1).

59. Because of the defendants' conduct set forth in this Court, the United States has suffered actual damages.

COMPLAINT - 15 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

## COUNT II
### (Federal False Claims Act – 31 U.S.C. § 3729(a)(2))

60. Plaintiff realleges and incorporates by reference paragraphs 1 through 59 as though fully set forth herein.

61. Defendants have knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by officials of the United States Government, in violation of 31 U.S.C. § 3729(a)(2).

62. Because of the defendants' conduct set forth in this Court, the United States has suffered actual damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief:

1. On Counts I and II, judgment for the United States against the defendants in an amount equal to three times the damages the United States Government has sustained because of the defendants' actions, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729.

2. On Counts I and II, an award to the Relator of the maximum allowed under 31 U.S.C. § 3730(d).

3. Attorneys' fees, expenses, and costs of suit herein incurred; and

4. Such other and further relief as the Court deems just and proper.

COMPLAINT - 16 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

## DEMAND FOR JURY TRIAL

Plaintiff demands that this matter be tried before a jury.

Dated this ___3d___ day of August, 2006.

                        GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

                        By _____
                              Warren E. Martin, WSBA No. 17235
                              wmartin@gth-law.com
                              Kenneth G. Kieffer, WSBA No. 10850
                              kkieffer@gth-law.com
                              Attorneys for Plaintiff

COMPLAINT - 17 of 17
[1346139 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565